**SIGNED THIS: September 13, 2007**

                                                    _____
                                                         **MARY P. GORMAN**
                                                    **UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| CARLA L. CLEMENT, | ) | |
| | ) | Case No. 06-70414 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| CARLA L. CLEMENT, | ) | |
| n/k/a Carla Seifert, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 06-7177 |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF EDUCATION and ILLINOIS | ) | |
| DESIGNATED ACCOUNT | ) | |
| PURCHASE PROGRAM, | ) | |
| | ) | |
| Defendants. | ) | |

# O P I N I O N

The issue before the Court is whether the Debtor's student

loan obligations owed to the Illinois Designated Account Purchase Program ("IDAPP") should be discharged pursuant to 11 U.S.C. §523(a)(8) because requiring payment of those loans would impose an undue hardship on the Debtor and her dependents.  For the reasons set forth below, this Court finds that the Debtor failed to meet her burden of proof on the elements of undue hardship and that her student loans owed to IDAPP are non-dischargeable.

   The Debtor, Carla Clement, filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code on April 13, 2006.  She subsequently married Kevin Seifert, and she is now known as Carla Seifert.  On August 15, 2006, Ms. Seifert filed a Complaint to Determine Dischargeability of Student Loan Debt Pursuant to 11 U.S.C. §523(a)(8).  The United States Department of Education and IDAPP were named as Defendants.  Ms. Seifert and the United States Department of Education entered into an agreed order denying the complaint as to the United States, but allowing Ms. Seifert a four-year deferral with leave to reopen the bankruptcy case and adversary proceeding at the end of the deferral period.  The remaining portion of the adversary proceeding was tried on July 17, 2007.  Ms. Seifert represented herself in the filing of both the original case and this adversary proceeding, as well as at trial.

   Ms. Seifert, who is in her early thirties, has two sons.  Her older son lives with her ex-husband in Bloomington, Illinois.  Ms. Seifert pays bi-weekly child support of $269.61.  She owes a child

support arrearage of $8,000.  Ms. Seifert also carries health insurance on her son, and she and her ex-husband equally split medical and dental bills not covered by insurance.  Her share of her son's orthodontist's bill will be $1,716.  Ms. Seifert also has a son with her current husband.  She pays $125 per week for day care for her infant son.

Ms. Seifert obtained an associate's degree from Springfield College in Illinois in 1998.  She earned a bachelor's degree in education from the University of Illinois at Urbana-Champaign in 2000.  She entered John Marshall Law School in 2000.  She struggled with law school and she left law school in December, 2002, after she failed to attain the minimum grade point level required by the school.  Throughout this process, Ms. Seifert used student loans to pay for her tuition and living expenses.  She has a total student loan debt in excess of $180,000, of which $80,183 is owed to IDAPP at an interest rate of 8.4% per annum.

Ms. Seifert's student loans became due and payable after a six-month grace period following the end of her law school career.  Ms. Seifert sought and was granted a forbearance when the grace period expired in June, 2003.  She received another forbearance in January, 2004.  A third forbearance expired in August, 2005.  At this time, she was offered monthly payments of $250.  She never made any payments on her IDAPP loans.

After leaving John Marshall, Ms. Seifert obtained a legal

assistant position at Kirkland & Ellis in Chicago where she earned around $31,000 per year. She left Kirkland & Ellis in November, 2003. She next worked at LaSalle Bank in commercial real estate where she earned about $35,000 per year. In November, 2005, she left her position at LaSalle Bank in Chicago and returned to Springfield, Illinois to take an administrative position with Wells Fargo.

According to the 2006 joint tax return which she filed with her husband, Ms. Seifert earned $45,448 from her employment with Wells Fargo. Her husband earned $3,181 from a coaching position, $10,000 as a farm employee, and $10,860 from his own farming operation. Thus, they had a combined income of $70,470 in 2006.

This year, Ms. Seifert has earned $24,698 through June 23, 2007. She was on schedule to earn as much or more as she did in 2006, but she switched to part-time status in June. Because of the downturn in the mortgage industry, she feared a layoff and opted for part-time status in order to preserve her job. She now has take-home pay of $469.27 every two weeks. Her child support obligation is deducted from her check. In addition, she contributes $64.32 every two weeks to her 401(k) plan.

Ms. Seifert drives a 2002 BMW which she purchased as a program car in July of 2002 or 2003. Her car payment is $410 per month. She admits that her car is expensive, but she reaffirmed her debt on the BMW because she needed reliable transportation to go to

Bloomington to see her son.  Her husband drives a 2007 Chevrolet pick-up truck which he purchased new last year.

Ms. Seifert bought a house in Springfield in December, 2005. Her house payment was $650 per month.  The house has been sold, and Ms. Seifert is now living with her husband and younger child in a farm house near Virden, Illinois where they pay monthly rent of $650.

Ms. Seifert suffers from chronic depression, anxiety, and panic disorder.  She has been under the care of Dr. Michael Bova since 1999.  According to Dr. Bova, depression is mostly considered a chemical imbalance in the brain, causing the brain not to function as efficiently as it should.  Treatments for depression include psychotherapy and medications to rebalance the multiple chemicals in the brain.  Stress causes depression to worsen.  Dr. Bova testified that a significant amount of debt may cause stress, which will trigger depression and anxiety.  He suggested that Ms. Seifert's depression has limited her ability to succeed.  However, he admitted that her depression has never been so severe that she needed psychotherapy or institutionalization.  He stated that Ms. Seifert's depression will be lifelong, but it is managed with multiple medications.

In order for Ms. Seifert to obtain a discharge of her student loans based on "undue hardship", the Seventh Circuit requires that she prove the following by a preponderance of the evidence:

    1.    That she could not maintain, based on her current income and expenses, a "minimal" standard of living for herself and her dependents if she were required to repay the loans;

    2.    That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

    3.    That she has made good faith efforts to repay the student loans.

Matter of Roberson, 999 F.2d 1132, 1135 (7th Cir. 1993) (adopting the three-part test set forth by the Second Circuit in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2nd Cir. 1987); Goulet v. Educational Credit Management Corp., 284 F.3d 773, 777 (7th Cir. 2002) (debtor must prove each element of the three-part test by a preponderance of the evidence); In re Simmons, 334 B.R. 632, 635 (Bankr. C.D. Ill. 2005), *aff'd* 2006 WL 2556581 (C.D. Ill.); *see* 11 U.S.C. §523(a)(8).

The first prong of the Brunner test requires an analysis of Ms. Seifert's current standard of living. As set forth above, Ms. Seifert and her husband reported earnings of over $70,000 in 2006. Ms. Seifert readily admits that her annual income along with that of her husband is above the federal poverty guidelines. Nevertheless, Ms. Seifert maintains that she cannot support her family and pay her student loans. Ms. Seifert has not met her burden of proof on this issue.

Ms. Seifert did not adequately address her total family budget. She was single and living in her own house when she filed

her petition. After the filing of her petition, she married Mr. Seifert, sold her house, and moved in with Mr. Seifert. Thus, they have combined their household expenses. Ms. Seifert failed to explain the impact of her marriage on her monthly expenses.

The schedules submitted by Ms. Seifert raised more questions than they answered. She prepared a Schedule I for her husband which showed monthly gross wages of $1,000, payroll and social security deductions of $200, and net monthly take-home pay of $800. This is less than half of what Mr. Seifert earned in 2006, and there was no explanation for this drop in income. In addition, Ms. Seifert submitted a combined Schedule J for herself and her husband which showed $2,750 as regular monthly expenses from her husband's business. This figure is based on annual farm expenses of $33,000 for 2007. According to the documents presented at trial, however, the annual farm expenses were only $15,338 in 2005 and $15,660 in 2006. Ms. Seifert did not explain why the farm expenses suddenly doubled. She also failed to identify the gross farm income expected to be generated by these expenses or why she was using gross farm expenses on Schedule J and net farm income on Schedule I.

The Court recognizes that Ms. Seifert recently took a voluntary deduction in her work hours in order to preserve her position with Wells Fargo. There was no evidence that Ms. Seifert has sought another full-time job in the mortgage industry or has

tried to utilize her degree from the University of Illinois to pursue a career in education.  A debtor who fails to maximize her income cannot complain that she is unable to earn sufficient income to maintain herself and her dependents and repay her educational debts.  In re Farrish, 272 B.R. 456, 462 (Bankr. S.D. Miss. 2001) (podiatrist who only applied to two clinics in his specialty area and did not attempt to relocate did not maximize his income); In re Healey, 161 B.R. 389, 394-95 (E.D. Mich. 1993) ("resolute determination to work in one's field of dreams, no matter how little it pays, cannot be the fundamental standard from which 'undue hardship' is measured").

The second prong of the Brunner test requires Ms. Seifert to show that her dire financial condition is likely to exist for a significant portion of the repayment period.  The Seventh Circuit has held that the dischargeability of a student loan should only be granted where there is a "certainty of hopelessness".  Matter of Roberson, 999 F.2d at 1136, citing In re Briscoe, 16 B.R. 128, 131 (Bankr. S.D. N.Y. 1981).  "Certainty of hopelessness" is a tough standard that is generally only met by the truly disabled or by debtors whose repayment periods have already expired so that the certainty of their inability to pay for the entire period is a matter of fact rather than speculation.  See In re Lewis, 276 B.R. 912, 917 (Bankr. C.D. Ill. 2002)(proof of expiration of repayment period alone may be sufficient to satisfy second Brunner prong.)

Neither party presented evidence as to the amount of the repayment period remaining for Ms. Seifert's loans. Because she left school less than five years ago, the Court assumes that the initial repayment period has not expired. Thus, the Court must look at the future to determine whether Ms. Seifert will have the ability to make meaningful payments on her student loans.

Ms. Seifert is a bright, articulate young woman. She had a difficult childhood but, through hard work, she was able to overcome the obstacles placed in front of her and graduate from the University of Illinois. The pleadings she prepared in this proceeding show a good command of the English language and an ability to organize and present her arguments. She demonstrated poise and an ability to think on her feet during her court appearances.

Ms. Seifert has a good education and marketable job skills. She has been steadily employed since she left school. Ms. Seifert has a serious medical condition, but she has worked hard to bring her condition under control with the help of her doctor and the appropriate medications. Her depression and anxiety should not seriously impair her future. *See* In re McClain, 272 B.R. 42, 48 (Bankr. D. N.H. 2002) (debtor failed to show that his depression constituted "an additional circumstance" impairing his ability to repay his student loans). Accordingly, Ms. Seifert has not met her burden of proof to show that additional circumstances exist

indicating that a dire financial condition is likely to persist for a significant portion of the repayment period. The Court cannot find a "certainty of hopelessness".

The third prong of the Brunner test requires an analysis of whether Ms. Seifert has made a good faith effort to pay her student loans. The Seventh Circuit has observed that "it is hard to see good faith in paying nothing when obtaining payment deferrals." In re Goulet, 284 F.3d *at* 779. Ms. Seifert obtained several deferrals and has yet to make a payment on her student loans. Moreover, her purchase of a BMW while she was obtaining deferrals shows that she was not making a strong effort to minimize her expenses. *See* In re Clark, 341 B.R. 238, 256 (Bankr. N.D. Ill. 2006) (purchase of luxury vehicle during loan repayment period is "self-imposed hardship"). Under these circumstances, the Court cannot find that Ms. Seifert satisfied the third prong of the Brunner test.

For the foregoing reasons, the Complaint to Determine Dischargeability of Student Loan Debt Pursuant to 11 U.S.C. §523(a)(8) is denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###